## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER SILLING & ASSOCIATES HOTEL INTERIOR DESIGN LTD., Office Unit 1503 and 1505A The Centrium 60, Wyndham Street, Central Hong Kong, China<br><br>          Plaintiff,<br><br>vs.<br><br>CASTLETON HOTEL PARTNERS I, LLC, 2615 30th Street, NW Washington, D.C.  20008<br><br><u>Serve:</u><br>Registered Agent: Bruce Bradley 2615 30th Street, NW Washington, D.C.  20008<br><br>          Defendant. | Civil Case No. _____ |

### COMPLAINT

**NOW COMES** Peter Silling & Associates Hotel Interior Design Ltd. ("PSA") and, as and for its Complaint against Castleton Hotel Partners I, LLC ("CHP"), states as follows:

### PARTIES

1.      Plaintiff PSA is a HKSAR corporation with its principal place of business in Hong Kong.

2.      Defendant CHP is a Delaware limited liability company with its principal place of business in Washington, D.C.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      The Court has personal jurisdiction over CHP because CHP maintains an office in Washington, D.C. and, as described below, conducts substantial business therein.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(a) because CHP resides in this District, and a substantial part of the events giving rise to this action occurred in this District.

## FACTS COMMON TO ALL COUNTS

6.      CHP, whose Managing Member is Mr. Bruce Bradley, and affiliates, including Capella Hotels and Resorts (collectively, the "Bradley Affiliates"), are engaged in the business of building, owning and managing luxury boutique hotels and resorts throughout the world, including in Singapore, Dusseldorf, Ixtapa, and Cabo San Lucas.  The Bradley Affiliates also intend to open new properties in Sochi (Russia), the Riviera Maya (Mexico) and Bangkok.

7.      In 2011, the Bradley Affiliates announced plans to build a hotel, specifically a top-tier retreat for the "discerning world traveler," in Washington D.C., "positioning guests between the center of culture, shopping, dining, and the headquarters of international policy and finance."  Indeed, the Bradley Affiliates promised their customers the unique benefits of the finest boutique hotels, including superb architecture and interior design. That hotel, now known as the "Capella Washington, D.C., Georgetown" (hereinafter, the "Capella Georgetown") opened on April 3, 2013.

8.    To achieve the promised superb interior design, the Bradley Affiliates engaged PSA whose business, as implied by its name, is in providing high-end hotel interior design services. Thereafter, PSA conceptualized the interior design of the Capella Georgetown, which design was inspired by the history of American architecture. PSA brought the hotel to life by depicting the evolution of this genre through the use of original contemporary art and furniture design blended with the more classic feel of the hotel's brownstone industrial exterior. Timeless pewter and gold tones are carried throughout the hotel and into the individually designed guest rooms, which were crafted to resemble elegant private residences. PSA's design also focused on providing a high level of guest comfort with rooms and suites featuring ample living and work space, plush furniture, modern amenities, and technology and guest services.

9.    PSA provided the foregoing services pursuant to a "Standard Form of Agreement Between Owner and Architect for Architectural Interior Design Services," which contract was executed by PSA and CHP on September 8, 2011 (the "Interior Design Agreement"). See Exhibit A.

10.    As noted above, PSA fully and properly performed its services pursuant to the Interior Design Agreement, and the Capella Georgetown opened to great fanfare in April, 2013. Indeed, though the Interior Design Agreement requires CHP to provided PSA timely written notice of any defects or problems with furniture, furnishings, finishes, fixtures, equipment, accessories, antiques, artifacts and artwork ("FF&E"), CHP provided none.

11.    Nevertheless, CHP has not fully performed its responsibilities under the Interior Design Agreement. Specifically, CHP has not paid and continues to owe PSA $221,375.00, which sum is composed of the following:

3

(a)     $45,000 due to PSA to compensate Robert Wolte & Partner Gmbh ("Wolte") for increased manpower required to complete hotel millwork installation by March 15, 2013 in spite of construction delays. See Exhibit B.

(b)     $45,000 also due to PSA to compensate Wolte for costs associated with the extended installation period caused by construction delays. See Exhibit C.

(c)     $55,000 due to PSA after 100% public area installation completion. See Exhibit D.

(d)     $40,375 due to PSA to pay Wolte after 50% public area installation completion for their scope of work. See Exhibit E.

(e)     $36,000 due to PSA for the 4th and 5th monthly installments for onsite supervision services. See Exhibit F.

12.     Indeed, for the purpose of inducing both Wolte and PSA to provide further and extraordinary services, CHP and Bradley agreed to pay the aforementioned two (2) $45,000 sums in a separate written agreement dated February 10, 2013. This offer was accepted by PSA on February 12, 2013 (hereinafter, the "Email Agreement"). See Exhibit G.

13.     Despite repeated oral and written demand, however, CHP and Bradley have refused to make the aforementioned promised and contracted for payments.

14.     Accordingly, CHP has materially breached the terms and conditions of the agreements and been unjustly enriched.

15.     PSA has satisfied all conditions precedent, and fully performed its obligations, under the Interior Design Agreement and the Email Agreement.

### COUNT I
### (Breach of Contract)

16.     PSA repeats and realleges the allegations of paragraphs 1-15, above, as if fully set forth herein.

17.     The Interior Design Agreement is a valid and enforceable contract between PSA and CHP.

18.     PSA has satisfied all conditions precedent, and fully performed its obligations, under the Interior Design Agreement.

19.     PSA's numerous requests for payment pursuant to the Interior Design Agreement were, and are, reasonable and were performed in good faith.

20.     Without justification or excuse, CHP has materially breached the Interior Design Agreement, by failing to make payments due.

21.     Based on the Interior Design Agreement, and CHP's material breach of that Agreement, PSA is entitled the damages in the amount of $221,375.00, together with prejudgment interest to the date of judgment in this matter.

22.     CHP's material breach of the Interior Design Agreement has also forced PSA to retain outside counsel to bring this action, and therefore PSA seeks reimbursement of its reasonable attorneys' fees, costs and expenses.

### COUNT II
### (Unjust Enrichment)

23.     PSA repeats and realleges the allegations of paragraphs 1-22, above, as if fully set forth herein.

24.     Pursuant to Rule 8(e)(2) of the Federal Rules of Civil Procedure, this count is pleaded in the alternative to Count I.

25.     PSA has provided goods and services to CHP for which CHP has not paid and CHP has taken undue advantage of PSA's situation, contrary to law and good conscience.  As a direct result, CHP obtained a substantial benefit and value.   CHP knowingly and voluntarily accepted and retained this benefit and value.

26.     CHP has provided no reimbursement, payment, or other consideration for the substantial benefit and value it received from PSA.  As such, PSA has conferred a benefit on CHP for which CHP equitably should compensate PSA. CHP has been unjustly enriched in violation of the fundamental principles of justice, equity, and good conscience.

27.     Under these circumstances, it would be inequitable, unfair, and unjust for CHP to retain this benefit.

**COUNT III**
**(Quantum Meruit)**

28.     PSA repeats and realleges the allegations of paragraphs 1-27, above, as if fully set forth herein.

29.     Pursuant to Rule 8(e)(2) of the Federal Rules of Civil Procedure, this count is pleaded in the alternative to Count I.

30.     PSA has provided goods and services to CHP for which CHP has not paid and CHP has taken undue advantage of PSA's situation, contrary to law and good conscience.

31.     CHP has given PSA nothing of value in return for certain goods and services, including those specified in paragraph 11 above.  As a result, CHP has been unjustly enriched, and payment is due from CHP to PSA in equity and good conscience.

## COUNT IV
### (Breach of Contract)

32.    PSA repeats and realleges the allegations of paragraphs 1-31, above, as if fully set forth herein.

33.    In the alternative, the Email Agreement is a valid and enforceable contract between PSA and CHP.  See Exhibit G.

34.    PSA has satisfied all conditions precedent, and fully performed its obligations, under the Email Agreement.

35.    PSA's numerous requests for payment were, and are, reasonable and were performed in good faith.

36.    Without justification or excuse, CHP has materially breached the Email Agreement, by failing to make the payments promised therein.

37.    Based on the Email Agreement and CHP's material breach thereof, PSA is entitled to damages, together with prejudgment interest to the date of judgment in this matter.

38.    CHP's material breach has also forced PSA to retain outside counsel to bring this action, and therefore PSA seeks reimbursement of its reasonable attorneys' fees, costs and expenses.

## COUNT V
### (Fraud)

39.    PSA repeats and realleges the allegations of paragraphs 1-38, above, as if fully set forth herein.

40.    CHP's promise to pay pursuant to the Email Agreement was made without any present intention to perform.

41.    PSA reasonably relied on CHP's promise and good faith, by continuing to work on the Capella Georgetown and by promising Wolte that it would be paid.  Accordingly, CHP's wrongful conduct has proximately caused damages to PSA.

42.    PSA is further entitled to recover punitive damages from CHP because its conduct was willful, wanton, and evidences that entire want of care as would raise a presumption of conscious indifference as to the consequences.

### COUNT VI
**(Attorney's Fees)**

43.    PSA repeats and realleges the allegations of paragraphs 1-42, above, as if fully set forth herein.

44.    CHP has acted in bad faith, been stubbornly litigious and caused PSA unnecessary trouble and expense in collecting the debt owed under the Interior Design Agreement and otherwise, and therefore, PSA is entitled to recover its expenses of litigation, including reasonable attorneys' fees.

### JURY DEMAND

PSA demands trial by jury of all issues raised in this Complaint.

**WHEREFORE**, Peter Silling & Associates Hotel Interior Design Ltd. respectfully prays for judgment in its favor and against CHP as follows:

(a)     Awarding PSA $221,375.00, together with interest thereon;

(b)     Determining that CHP has been unjustly enriched in the amount of $221,375.00 or more, together with interest thereon;

(c)     Awarding PSA restitution in the amount of $221,375.00, together with interest thereon;

(d)     Awarding PSA punitive damages in an amount to be determined by the enlightened conscience of the jury;

(e)     Awarding PSA its reasonable attorneys' fees, costs and expenses of litigation in prosecuting this action; and

(f)     Awarding PSA such other and further relief as this Court deems just and proper.

Dated this 27th day of September, 2013.

Respectfully submitted,

PETER SILLING & ASSOCIATES
HOTEL INTERIOR DESIGN LTD.,

By: /s/ James Philip Head
     James Philip Head (DCB#. 453130)
     D. Margeaux Thomas (DCB# 986974)
     WILLIAMS MULLEN, P.C.
     8300 Greensboro Drive, Suite 1100
     McLean, Virginia 22102
     703-760-5200 (phone)
     703-748-0244 (fax)
     jhead@williamsmullen.com
     mathomas@williamsmullen.com